CATHARINE H. MITTNACHT, Appellant, *v.* ANTONINO MONTANA, Sued as ANTONIO MONTANA, Respondent.

First Department, June 1, 1923.

Easements — right of way from rear yard of plaintiff's premises through defendant's building to street was created by deed in 1859 — defendant closed way in 1921 — defenses of abandonment, extinguishment by adverse possession, and estoppel — easement was for " free and uninterrupted use " and was not limited to ingress or egress — abandonment by agreement not shown — change in physical condition of plaintiff's premises did not show abandonment — practical construction of covenant by defendant was against abandonment — abandonment can be shown only by unequivocal acts showing intention to abandon — plaintiff not estopped to ask for equitable relief.

In an action to restrain the defendant from interfering with plaintiff's right of way and to compel the removal of an obstruction thereto, it appeared that a right of way from the rear yard of the premises now owned by plaintiff, through the building now owned by the defendant, to the street on which defendant's premises abut, was created by an agreement in 1859, which provided that the then owner of plaintiff's premises and his heirs and assigns should have the " free and uninterrupted use " of the said alley or gangway forever; that in 1921 the defendant appropriated the alley or gangway to his use to the exclusion of the owner or dominant tenant. The defendant interposed the defense of abandonment, extinguishment by adverse possession and estoppel.

*Held,* that permission to a lessee of a former servient tenant to brick up the opening through which the right of way ran upon a promise to remove the brick and open the right of way on request of the owner thereof did not show abandonment of the right of way.

The agreement creating the right of way did not limit the dominant tenement to ingress and egress but granted the " free and uninterrupted use " of the alleyway and, therefore, the destruction or extinguishment of the easement cannot be predicated upon the change in the character or use of the dominant property.

Furthermore, the defendant gave a practical construction of the grant, to the effect that it conferred the right upon the dominant tenant to use the alleyway for the purpose of storing and transporting equipment and supplies and that it was not to be used solely as a means of ingress and egress.

In order to establish an abandonment of the easement created by a grant there must be definite, unequivocal acts shown declaratory of a clear purpose to cease forever any use or interest in the right of way, and in this case the acts asserted by the defendant to constitute such unequivocal intent fall short of the proof necessary to establish it.

The plaintiff was not estopped by any act on her part from asking that the defendant be compelled to remove obstructions to the right of way, since both oral and written notice that plaintiff claimed her easement still persisted was given to the defendant before the obstruction was erected.

APPEAL by the plaintiff, Catharine H. Mittnacht, from a judgment of the Supreme Court in favor of the defendant, entered in

First Department, June, 1923.                    [Vol. 205

the office of the clerk of the county of New York on the 28th day of June, 1922, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the complaint upon the merits.

*Delehanty, Giffin, Hannon & Evans* [*John T. Loughran* of counsel; *John W. Hannon* with him on the brief], for the appellant.

*Pascal Fortinash* [*Robert Ferrari* of counsel], for the respondent.

McAvoy, J.:

An easement of way created by grant is not extinguished in such facile modes as are those which arise by prescription, user or necessity. The plaintiff's predecessor in title was granted by an indenture, in which the then adjoining owner was grantor, a conveyance of an easement, to wit, a right of way running from the rear yard of his premises to the sidewalk on Spring street, New York, through defendant's building. The way is referred to throughout the indenture as an " alley or gangway," and the covenant for its use in the instrument reads, after describing its site, width, height and flooring and the openings or doors to be let into it: " and it is agreed that the said parties of the first part, their heirs and assigns may have the free and uninterrupted use of the said alley or gangway and of the said two door-ways (the latter of the door-ways when opened) for themselves, their heirs, assigns, tenants and servants forever, such use of the said alley or gangway to be in common with the said parties of the second part, their heirs, assigns, tenants and servants."

The court's decision finds without exception to its correct determining:

" 4. Subsequent to May 19, 1859, and in or about the year 1860, said Henry A. Dingee duly complied with all the terms and conditions on his part to be performed under said agreement dated May 19, 1859, and duly constructed on said premises 21 Spring Street, in the manner specified in and in accordance with the terms, provisions and covenants contained in said agreement, a building, a brick westerly wall, an alley or gangway and a door-way and opening in said westerly wall, such door-way and opening being located in said wall of said building 21 Spring Street at a point designated for that purpose by said Thomas W. Rice about 61 feet from the southerly end of said wall."

This " alley or gangway " is the portion of defendant's premises which was burdened by the servitude, the plaintiff's easement in question, and which the defendant in 1921 appropriated to his use to the exclusion of the owner of the dominant tenement, to which premises it was appurtenant.

The servient tenant, defendant here, who has appropriated the granted way, says that the plaintiff's easement in question had been abandoned prior to the commencement of this action, and that the defendant and his predecessors in interest had by adverse possession extinguished the plaintiff's easement in question prior to the commencement of this action. And, even if this may not be found, it is claimed that the plaintiff is not equitably entitled against the defendant to the relief prayed for in the complaint.

The plaintiff showed a right as dominant tenant to the servitude, and proved by admissions and the grant that the title to the incorporeal hereditament was still in her. The evidence of abandonment was based upon a permission to one Cole, a lessee of a former servient tenant, to brick up the opening which had theretofore been made under the original indenture into the way. Cole testified that this closing was made upon permission of the owner of the dominant tenement, and upon a promise to remove the brick and open the aperture on request of the owner of the servitude.

In 1890 or 1891, when the old building on the plaintiff's dominant premises was torn down and the new building put up thereon, this old arched opening was left in the party wall. It was left there as an open space, arched, as a photographic exhibit of plaintiff in the case indicates. The arched doorway in the party wall between the easement alleyway and the dominant premises of the plaintiff, which is shown as walled or bricked up in this exhibit, is located sixty-one feet back from Spring street.

The trial court found as a fact that the grant was executed and the easement alleyway created for a particular, limited purpose, *i. e.*, " with the purpose, object and intent of providing a means of ingress and egress between Spring Street and the then existing yard in the rear of the dwelling house then standing on the front or southerly portion of said premises 23 Spring Street, through the alley or gangway and through the doorway and opening in the brick wall in said agreement referred to, and of providing a means of ingress and egress between said premises 21 Spring Street and said yard of said premises 23 Spring Street through said doorway and opening leading into said yard."

Further, the trial court found as a fact that, by reason of " marked and substantial change in the physical condition of plaintiff's premises " after the easement in question was granted (together with other matters, such as placing various articles used in plaintiff's business there), " plaintiff intended to and did forever abandon and extinguish all her right, title and interest in and to and in and to the right to use  *  *  *  said alley or gangway."

The omission from the grant here of any words limiting the use of this easement alleyway must control the construction of the grant, for a limitation upon the existence and continuance of an easement privilege can be predicated upon a change in the character or use of the dominant property only when an intention to impose such limitation is found in the language of the grant itself. (*Arnold* v. *Fee*, 148 N. Y. 217, 218.)

" Nothing in the language of this grant conveys the idea of an intended limitation upon the existence and continuance of the privilege, in the event that the defendants [owners of the dominant premises] should change the character or uses of their property bordering thereupon." (*Arnold* v. *Fee, supra,* 217.)

Nothing here bears out an intention to limit the use of this easement alleyway as " a means of ingress and egress between Spring Street and the then existing yard in the rear of the dwelling house then standing on the front or southerly portion of said premises 23 Spring Street." But such a restriction in the grant is imputed to its meaning in the decision. The words employed in the grant are, " free and uninterrupted use."

That the defendant gave a practical construction of the grant in antithesis to the construction placed thereon in the decision of the trial court is obvious. The easement alleyway has been used as an exit and also for taking merchandise through ever since 1861 up to the time the respondent destroyed the alleyway in 1921; and the appellant and her predecessor in title at all times have filled the alleyway with safes, beams, planking, hydraulic jacks, tackle and other articles used in the safe business of the appellant's relatives, without objection on the part of the respondent or his predecessors in title.

The rule as to easements acquired by deed is: " One who acquires title by deed to an easement appurtenant to land has the same right of property therein as he has to the land. He may insist upon its use whenever occasion requires. * * * The right conveyed can be defeated only by showing that it has been waived or lost in some of the ways recognized by law." (*Haight* v. *Littlefield*, 147 N. Y. 338, 343, 344.)

The nature of proof required for a showing that an easement acquired by grant has been waived, lost or abandoned is described in the following excerpt from a ruling by the Appellate Division, Fourth Department, in *Heughes* v. *Galusha Stove Co.* (133 App. Div. 819). Mr. Justice SPRING says: " ' In the first place there is a marked difference between easements acquired by express grant and those established by mere user. Mere non-user in the former

case, even for more than twenty years, will not destroy the right, if the owner of the servient estate does no act, which prevents the use. * * * '

" In the second place, in order to establish an abandonment, there must be definite, unequivocal acts shown declaratory of a clear purpose to cease forever any use or interest in the alleyways. * * *

" This strict rule must obtain, as one may lose his right to the enjoyment of an easement by abandonment for a much less time than is required to extinguish his interest by adverse possession."

The Court of Appeals is in accord with this declaration of the law of abandonment of easement. Judge EARL of that court says: " An easement may be abandoned by unequivocal acts showing a clear intention to abandon, or by mere non-user, if continued for a long time. The mere use of the easement for a purpose not authorized, the excessive use or misuse, or the temporary abandonment thereof, are not of themselves sufficient to constitute an abandonment. * * * The acts claimed to constitute the abandonment of an easement must show the destruction thereof, or that its legitimate use has been rendered impossible by some act of the owner thereof, or some other unequivocal act showing an intention to permanently abandon and give up the easement." (*Roby* v. *N. Y. C. & H. R. R. R. Co.*, 142 N. Y. 176, 181.)

The acts asserted by defendant to constitute a definite, unequivocal intent to cease forever any use or interest in the alleyway, fall far short of the proof necessary to establish such intent as these rules demonstrate.

I think the learned court confused the nature of the easement by grant with that of the easements by prescription or necessity, and was too lenient in his view of the probative force of the evidence claimed to constitute abandonment or relinquishment of the right to the servitude. There was no estoppel by the conduct of plaintiff. Both oral and written notice that plaintiff claimed her easement still persisted was given defendant before the obstructive stairway now athwart the way was erected. What damage occurs to defendant in its removal he has brought about by refusing to recognize plaintiff's right.

The judgment for defendant should, therefore, be reversed, with costs, and judgment ordered for plaintiff, as prayed for in the complaint, with costs.

CLARKE, P. J., SMITH, MERRELL and FINCH, JJ., concur.

Judgment reversed, with costs, and judgment ordered for plaintiff as prayed for in the complaint, with costs. Settle order on notice.