Michael Catalano, J.
On August 4, 1960, a.n order to show cause was obtained by plaintiff for a temporary injunction 11 enjoining * '* * defendant * * * from holding * * * a public sale of furniture * * * on the third and fourth floors of 600 Main Street, Buffalo, New York which would cause the general public to walk through and trespass upon the premises known as 606 Main Street in the City of Buffalo, New York, which are leased by the plaintiff ”.
On August 24, 1960, such a temporary injunction order was granted by the court.
*897 On July 9, 1957, the parties entered into an agreement, reciting that defendant, as party of the first part, was lessee of 606 Main Street and plaintiff, as party of the second part, was desirous of leasing said premises, and agreeing, in part: “ fifth: The party of the second part agrees that the party of the first part shall have full means of access and egress during the party of the second part’s business hours to and from the floors specified in paragraph ‘ Fourth ’ prior to their surrender, and to the space on the third and fourth floors leased by the party of the first part from Chippewa-Pearl, Inc. during the continuation of said lease; provided, however, that the party of the first part may not take furniture through the main floor of the store after September 1, 1957 but may move furniture by means of the freight elevator and sidewalk lift and/or by whatever means are used by the party of the second part for moving its own furniture. The party of the first part shall not have a key to the premises.”
On July 9, 1957, defendant was and still is in possession of the third and fourth floors of premises known as 600 Main Street, adjacent to the premises known as 606 Main Street, Buffalo, New York, under a written lease with Chippewa-Pearl, Inc., the owner. On said date, defendant was ceasing retail furniture operations, but no representation or agreement was ever made as to the resumption of retail operations by defendant to plaintiff; and prior thereto, defendant had been the tenant of the premises located at 606 Main Street, as well as said portion of the third and fourth floors of the adjacent premises at 594-604 Main Street; the only means of access and egress thereto was through 606 Main Street.
At the time of the execution of said agreement, plaintiff was well aware of the fact that the only means of access to said portion of 594-604 Main Street was through 606 Main Street. At said time, defendant was and still is the tenant of said portion of 594-604 Main Street under a lease that expires May 1, 1962 at, a monthly rental of $72.50 which expiration date plaintiff knew; and this lease permits defendant to use the premises only for a lawful purpose.
Defendant had used said portion of 594-604 Main Street at various times for selling as a sales and show room and as an office and storeroom; and defendant never made any agreement or representation to plaintiff as to the use that would be made by it of said premises at 594-604 Main Street. Defendant removed its signs from the front of 606 Main Street and delivered its keys to plaintiff.
*898 Plaintiff’s complaint prays for judgment enjoining permanently defendant ‘1 from attempting to and from holding a sale that would cause the general public to walk through the premises of the plaintiff.”
Defendant’s counterclaim demands a. declaratory judgment directing plaintiff not to interfere with “ the defendant, its officers, directors, servants, employees, or any person having business with the said defendant from gaining access or egress to that portion of the premises at 594-604 Main Street leased by said defendant.”
The fundamental rule in the interpretation of all contracts is to ascertain the substantial, expressed intent of the parties contained in the entire agreement. (Manson v. Curtis, 223 N. Y. 313, 320.) If the words are clear, other means of interpretation are not necessary. (McCluskey v. Cromwell, 11 N. Y. 593, 601.) In considering the entire contract, the court may examine the relation of the parties, the circumstances under which it was executed so as to give a sensible meaning to the words used (Atwater & Co. v. Panama R. R. Co., 246 N. Y. 519, 524): punctuation and grammatical construction may be weighed to clarify, but not to defeat, the parties’ intent. (Wirth & Hamid Fair Booking v. Wirth, 265 N. Y. 214, 219.) Technical words are taken in their technical sense, unless context or usage clearly indicate otherwise. (Nau v. Vulcan Rail & Constr. Co., 286 N. Y. 188, 198.) Loosely drawn instruments, such as letters between business men, shall be read as the parties would read them to avoid meaninglessness (Outlet Embroidery Co. v. Derwent Mills, 254 N. Y. 179, 183); but where the contract evidences care in its preparation, it will be presumed that its words were employed deliberately and intentionally. (Matter of Rivas, 100 N. Y. S. 2d 357, 365.) In no event may the court construct a new contract for the parties. (Dwight v. Germania Life Ins. Co., 103 N. Y. 341, 347.)
A right of way, such as a right of “ egress and ingress ” over the property of another, may be general in character and usable for all purposes; or it may be limited, such as a right of way for carriages not carts, for horses not carriages, or only a foot-way. (Dalton v. Levy, 258 N. Y. 161, 166.) Where the terms of the grant are general, it thereby includes all reasonable and lawful uses to which the property may be devoted. (Missionary Soc. v. Evrotas, 256 N. Y. 86, 89; see, also, O’Neil Supply Co. v. Petroleum Heat S Poiuer Co., 280 N. Y. 50, 55.)
The mere fact that a use is novel is not sufficient to prevent its enforcement whether or not it be called an easement, license, *899 or contractual right. (See Restatement, Property, vol. V, Servitudes, Part I, ch. 37, § 450, pp. 2909-2910; ch. 43, § 512, p. 3115.)
An easement is a right to use the land of another, enjoyed by a dominant estate over a servient estate, appurtenant thereto, but not personal to the owner, and classified as an incorporeal hereditament. (Antonopulos v. Postal Tel. Cable Co., 261 App. Div. 564, 568, affd. 287 N. Y. 712.) Easements are acquired by grant or prescription. (Smith v. New York Cent. R. R. Co., 235 App. Div. 262, 266.) Strictly speaking, there is no easement in gross, limited to the person, nonassignable and noninheritable. (Loch Sheldrake Associates v. Evans, 306 N. Y. 297, 304; see, also, Wilson v. Ford, 209 N. Y. 186, 196.)
A license differs from an easement in that the latter includes an interest in land owned by another, whereas the former is merely authority to do an act upon such land without having an interest or estate therein. (Mammy’s, Inc., S Pappy’s, Inc., v. All Continent Corp., 106 N. Y. S. 2d 635, 638.) A license may be revoked by the licensor, though consideration has been paid for it, though intended to be continuing, and though money has been expended in reliance on it. (See authorities cited in Schusterman v. C. & F. Caterers, 192 Misc. 564, 567.) Although injunctive relief may not be had because of a license revoked, nevertheless, a license for a definite term embodied in a valid contract cannot be prematurely ended without creating a cause of action for breach of that contract. (Melodies, Inc., v. Mirabile, 4 Misc 2d 1062, 1063, mod. on other grounds 7 A D 2d 783, motion for reargument denied 7 A D 2d 952, 8 A D 2d 664; see, also, Crosdale v. Lanigan, 129 N. Y. 604, 610, 611.)
A lease for years is deemed personalty (Matter of Grumman Aircraft Eng. Corp. v. Board of Assessors, 2 N Y 2d 500, 507, cert, denied 355 U. S. 814, rehearing denied 355 U. S. 885), although sometimes denominated by statute as ‘ ‘ estates for years.” (Real Property Law, § 30; L. 1896, ch. 547, § 20.)
Here, plaintiff contracted with defendant to allow defendant “ full means of access and egress during * * * [plaintiff’s] business hours to and from”. The nine floors at 606 Main Street to end November 1, 1957, “ and to the space on the third and fourth floors leased by * * * [defendant] from Chippewa-Pearl, Inc.” to end May 1,1962. This was a general right of way of full means of access and egress, limited only by a stated time and place. The expressed limits on the use were that defendant “ may not take furniture through the main floor of the store [meaning 606 Main Street] after September 1, 1957 *900 but may move furniture by means of the freight elevator and sidewalk lift and/or by whatever means are used by * * * [plaintiff] for moving its own furniture. ’ ’
Plaintiff did not limit the use to any named or classified persons, but allowed full means of access and egress to any person having a reasonable and lawful purpose to use plaintiff’s premises to reach defendant’s premises from the public highway and return. The words are clear, though technical, employed deliberately and intentionally.
Although the parties are both in the furniture business, no words in the contract were used to prevent defendant from conducting its business from 594-604 Main Street; if so intended, they could have been added. It is not for the court so to do.
Ño easement could have been granted by plaintiff because it was only a lessee for years; plaintiff could not burden the land with an easement as a mere lessee thereof. At most, defendant received a license coupled with an interest in the form of a contract right. Plaintiff may not enjoin, by court order or otherwise, this contract right of defendant to full means of access and egress as delimited by the contract itself.
This contract between plaintiff and defendant was not the usual sale of a going business with the good will for a price; but rather, defendant paid plaintiff $3,500 (less discount) for a general release running from the owner of 606 Main Street to defendant and for the said “ full means of access and egress.” Defendant should not be deprived of its good will, its right to continue in the furniture business, its right to said ‘ ‘ full means of access and egress,” without some showing in the contract of an intention to surrender the same.
Accordingly, plaintiff’s complaint, praying for a permanent injunction, is dismissed; defendant’s counterclaim, demanding a declaratory judgment directing plaintiff not to interfere with defendant, its officers, directors, servants, employees, or any person having business with defendant from gaining access and egress to that portion of the premises on the third and fourth floors at 594^604 Main Street, Buffalo, New York, leased by defendant for a term ending May 1, 1962, through and over premises leased by plaintiff at 606 Main Street, Buffalo, New York, during plaintiff’s business hours, except that defendant may not take furniture through the main floor of said store of plaintiff but may move furniture by means of the freight elevator and sidewalk lift and/or by whatever means are used by plaintiff for moving its own furniture, is granted; with costs.